UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA GARDNER,

       Plaintiff,                                      Hon. Richard Alan Enslen

v.                                                        Case No. 4:06-CV-119

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

### PROCEDURAL POSTURE

Plaintiff was 55 years of age at the time of the ALJ's decision. (Tr. 26, 49). She possesses a Master's Degree and worked previously as a librarian. (Tr. 64, 761).

Plaintiff applied for benefits on September 6, 2001, alleging that she had been disabled since July 1, 2001, due to chronic fatigue, asthma, fibromyalgia, lupus, and allergies. (Tr. 49-51, 63). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-48). On May 11, 2004, Plaintiff appeared before ALJ M.J. Adams. (Tr. 757-89). In a written decision dated July 29, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 18-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 8-11). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

### ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating claims of disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3

a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Plaintiff bears the burden of proof through step four of the sequential process. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The ALJ determined that Plaintiff did not suffer from a severe impairment. A claimant who does not have a "severe impairment" will not be found "disabled." 20 C.F.R. § 404.1520(c). The ALJ concluded, therefore, that Plaintiff was not disabled as defined by the Social Security Act. The Court finds that the ALJ's conclusion that Plaintiff did not suffer from a severe impairment is not supported by substantial evidence.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also*, *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 929 n.2 (6th Cir., Dec. 14, 2007).

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also*, *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

Step two of the sequential disability process is considered a "de minimus hurdle" designed to subject to dismissal only those claims which are "totally groundless" from a medical standpoint. *Rogers*, 486 F.3d at 243 n.2; *Despins*, 257 Fed. Appx. at 929; *Higgs*, 880 F.2d at 860. As the Sixth Circuit has recognized, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 Fed. Appx. 326, 331 (6th Cir., Jan. 9, 2001) (quoting *Higgs*, 880 F.2d at 862).

Before discussing the relevant medical evidence, a few comments about the nature of fibromyalgia are necessary. Courts recognize that fibromyalgia "is an unusual impairment in that its symptoms are often not supportable by objective medical evidence." *Vance v. Commissioner of Social Security*, 260 Fed. Appx. 801, 806 (6th Cir., Jan. 15, 2008). Fibromyalgia sufferers often exhibit "normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244. With respect to diagnosing or assessing the severity of fibromyalgia, objective medical tests are often of "little relevance" because "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Id.*

5

at 243. Fibromyalgia is diagnosed and assessed by testing "a series of focal points for tenderness" and ruling out other possible conditions through objective medical and clinical measures. *Id.* at 244.

From approximately 1998 through early 2003, Plaintiff consistently reported experiencing fatigue and aches and pain "from head to toe," which resulted in diagnoses of (among other things) fibromyalgia and chronic fatigue syndrome. (Tr. 116-82, 200-389). Plaintiff treated with physicians, a chiropractor, and also pursued various alternative therapies, without success. (Tr. 116-82, 200-389).

On March 17, 2003, Plaintiff was examined by Dr. Steven Ytterberg, a rheumatologist at the Mayo Clinic. (Tr. 476-79). Plaintiff reported that she was experiencing fatigue, difficulty sleeping, and muscle pain throughout her body. (Tr. 476-77). An examination revealed multiple fibromyalgia tender points, including the lateral epicondyles, trapezii, base of the occiput, lateral margins of the sternum, medial fat pads of the knees, right cervical muscles, and right greater trochanter. (Tr. 478). Dr. Ytterberg diagnosed Plaintiff with fibromyalgia. (Tr. 479).

On March 18, 2003, Plaintiff was examined by Dr. Stephanie Drach, with the Mayo Clinic Fibromyalgia Treatment Program. (Tr. 474-75). Plaintiff reported experiencing fatigue, muscle cramping, and "constant widespread pain in the muscles and joints." (Tr. 474). An examination revealed that "16/18 standard tender points are positive: right occiput, right lower cervical, right trapezius, left trapezius, right scapular, left scapular, right gluteal, left gluteal, right greater trochanter, left greater trochanter, right second rib, left second rib, right lateral epicondyle, left lateral epicondyle, right medial fat pad proximal to joint line of knee, left medial fat pad proximal to joint line of knee." (Tr. 475). Dr. Drach further noted that Plaintiff "is diffusely tender over most of the muscle groups and a number of joint regions." (Tr. 475). Plaintiff was entered in

the Mayo Clinic Fibromyalgia Treatment Program, but the doctor noted that Plaintiff "would likely benefit from a more comprehensive pain rehabilitation approach due to her limitations from the pain." (Tr. 476).

On March 18, 2003, Plaintiff was examined by Dr. Kevin Moder at the Mayo Clinic. (Tr. 471-72). Plaintiff reported that she was experiencing "aching" in her muscles, as well as fatigue and non-restorative sleep. (Tr. 471). An examination revealed that Plaintiff "has multiple fibromyalgia tender points over [the] trapezius, occiput, subscapular area, anterior chest wall, both lateral epicondyles, trochanteric and pes bursa areas." (Tr. 471). Dr. Moder concluded that Plaintiff "does meet ACR criteria for fibromyalgia." (Tr. 471). The doctor indicated that while Plaintiff "would benefit from [the Clinic's] Fibromyalgia Treatment Program," he was "doubtful this program will be sufficient" given the results of his examination. (Tr. 472). The doctor instead recommended that Plaintiff "be seen in the Pain Rehab Center." (Tr. 472).

On March 19, 2003, Plaintiff was examined by Christopher Sletten, Ph.D. at the Mayo Clinic Pain Rehabilitation Center. (Tr. 467-68). The doctor reported that Plaintiff was experiencing "a great deal of difficulties secondary to her chronic pain." (Tr. 468). The doctor recommended that Plaintiff participate in physical and occupational therapy. (Tr. 468). Plaintiff was also prescribed various medications to treat her fibromyalgia. (Tr. 468).

Subsequent treatment notes reveal that Plaintiff continued to experience fatigue and body aches. (Tr. 484-749).

On May 7, 2004, Dr. Sandra Denton authored a letter regarding Plaintiff's condition. (Tr. 500-08). Dr. Denton reported that she had been treating Plaintiff for ten years, during which time her condition deteriorated, due in part to her fibromyalgia. (Tr. 500-02). Dr. Denton reported

7

that Plaintiff satisfied the American College of Rheumatology criteria for fibromyalgia. (Tr. 503). The doctor reported that Plaintiff 'exhibits the typical picture we see in [fibromyalgia] syndrome with deteriorating mental cognitive function and inability to focus or concentrate." (Tr. 501). The doctor further observed that Plaintiff's physical condition had deteriorated significantly, impairing her ability to perform simple tasks such as typing a document. (Tr. 501-02). Dr. Denton reported that Plaintiff is not a malingerer. (Tr. 504).

In concluding that Plaintiff did not suffer from any severe impairments, the ALJ focused almost exclusively on the results of psychiatric consultations and objective medical testing, neither of which are particularly helpful or relevant when assessing the impact of fibromyalgia. The ALJ also concluded that "none of the claimant's examining physicians bear witness to the excess pain the claimant alleges." (Tr. 23). This is simply inaccurate, as Dr. Denton and others have consistently reported such. Moreover, the ALJ has identified no evidence that any of Plaintiff's examiners or care providers have called into question Plaintiff's veracity or the accuracy of her subjective physical complaints of pain and limitation resulting from her fibromyalgia.

In sum, there is no question that Plaintiff suffers from fibromyalgia. Furthermore, the evidence of record clearly indicates that this condition "significantly limits" Plaintiff's "ability to do basic work activities." While the ALJ has presented an arguably persuasive rationale as to why Plaintiff should ultimately be denied disability benefits, such arguments are inappropriate at step two of the sequential disability process. The ALJ's conclusion that Plaintiff's fibromyalgia is not a severe impairment is contradicted by the voluminous administrative record. As discussed above, at step two of the sequential disability process Plaintiff's burden is a de minimis one. Plaintiff has easily met this burden and demonstrated that she suffers from one (or more) severe impairments.

For the reasons discussed herein, the Court finds that the ALJ's decision that Plaintiff does not suffer from a severe impairment is not supported by substantial evidence.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings, including but not necessarily limited to, an accurate assessment of the severe impairments from which Plaintiff suffers, an assessment of her residual functional capacity, and a determination as to whether Plaintiff is capable of performing substantial gainful activity despite her limitations.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not comply with the proper legal standards and is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 7, 2008
 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge